Be grateful for her presence here today. The first case, Takieh v. Romira. I've got three lawyers I see on the screen. If you can hear me, would you please raise your hand? Got it. Okay, we've set it for 10 minutes one side, and one side is to ask to split. When we do the split, we'll set the clock individually for five minutes per. When you're ready, counsel, we've read your briefs, look forward to your argument. Well, thank you. We appreciate it. My name is Bill Miller. Please, the court, I would like to reserve two minutes for possible rebuttal. Okay. Now, it's important to remember that in the underlying hearing that we're challenging the district court's ruling on their preclusive effect and on their taking of judicial notice, it's important to know that one of the three key affidavits that call into question the motivation for this campaign directed against Dr. Sharifi, my client, it's important to notice that came after. All seven affidavits came after the fair hearing. And I want to quickly read from Leslie Wilson's affidavit. That was August of 2019, and I will quote. It's Exhibit B in the first amended complaint. She was a certified cardiac sermographer. Dr. Sharifi is a cardiac surgeon. And she heard the chief counsel from Banner make the following comments about Sharifi. He is a terrible doctor. He kills patients. He is a danger to patients. Randy did a great job at the hearing and swayed the hearing panel. And finally, she said, the idiot Muslim Iranian has dared to sue me and report me to the bar. It's time for a decision. I will make his life a living hell. Counsel, I'm sorry for interrupting you at this point. But we have a decision from the Arizona Superior Court on the issues that were raised in that matter. And whether evidence surfaced after that, it was evidence that I would assume was available to the defendant prior to that decision. So whatever considerations were given by the court in finding that there was substantial evidence to support the revoking of the doctor's privileges, is that not issue preclusion for you on those issues? Why would we have to reopen that which was already adjudicated fully by him? That's a terrific question, Your Honor. It's a twofold answer. The first part is because the hearing itself is not an administrative agency. It is a panel that the hospital put together and what we found out through these affidavits, with this notion of Randy did a great job, right before the hearing, they changed the bylaws in order to prevent Dr. Shirifi from getting a fair hearing. So this is evidence that was not available at the time. This witness was identified, but she did not make that statement. More importantly, we have a situation where her standard was not a preponderance of the evidence. It's a much higher standard. So to give preclusive effect to that ruling would not be fair because the standards were different. And then finally in Arizona, it's interesting, Your Honor, when we review a true administrative decision, often the reviewing judge will entertain new evidence, new witnesses, new concepts, just to make sure that due process is fully adhered to. None of that happened in this hearing panel. What about the second case? The one that I, as far as I'm aware, is still up on appeal to the Arizona Court of Appeal. Is there any preclusive effect coming out of that case? No, Your Honor, there is not. That was an intentional interference case and a defamation case. And there's been no final ruling on the Supreme Court, but that court did not hear any of the racial allegations that we are now bringing in this case. And in fact, Judge Whitten, in one of the hearings, we discussed the fact that it wouldn't even be appropriate to bring it to that proceeding. And we informed that court that we'd be filing this in federal court. Now, let me ask you this. Is Arizona preclusion law similar to California's? That is to say, putting to one side the preclusive effect, if it is preclusive, you know, the scope of the effect. Do you get preclusion in Arizona as soon as the trial court has issued this decision, or do you need a final decision on appeal? Terrific question. It is once the decision is made. But under the Hawkins case, you have to litigate the same legal rights and you have to sought the same. Let me interrupt to make sure I understood the answer. You said as soon as the decision is made, as soon as the decision is made by the trial court? Yes. But again, nobody ever heard in the underlying case anything about any of the 1981 discriminatory actions. And in fact, Judge Flores specifically said, I can't hear that. I don't want to hear it. I can't hear it. But it's not discriminatory actions. It's frequent and it's statutory that they bring in the new evidence, newly discovered evidence and such. So let me make sure I understood your answer as to the second case. You're saying that not only is there no issue preclusion, there's no claim preclusion because the claim you're now bringing could not have been brought in that proceeding? Yes. Okay. So may I ask you separate and apart from the preclusion issue? What about the allegations of the complaint? Were those allegations sufficient to plausibly allege a violation of section 1981? Yes, Your Honor. That is maybe the heart of the case under Comcast. And we're looking at those as pretexts, not as something that would obviate our proximate cause obligation under Comcast. Counsel, more fundamentally, where were the allegations based on race in your complaint? Oh, throughout the complaint on numerous occasions in the First Amendment complaint. There were allegations based on nationality. But I'm asking you, where were the allegations specifically based on race? What was the race of your client? My client was an Arab of Iranian descent. Okay, so the race was Arab. So tell us where in the complaint you allege that he was discriminated against based on his Arab race? I believe in the initial paragraphs, Your Honor, and in 398 and 399. Does that accept a record? 398 and 399? Yes, I believe so, Your Honor. And I believe that when the district judge decided that section 1981 would broadly define race because of ancestry or ethnic characteristics. So we're in a situation where Dr. Sharifi's racial identification is from his ancestry and ethnic characteristics. So what does that mean? What does that mean in plain language, what you alleged in the complaint? He's non-white. He's non-white. And he's being deprived of his contractual rights because of that. Would you agree that section 1981 does not cover nationality? Yes. Okay. Yes. But Your Honor, and I don't mean to be vulgar, but using words such as the effing Iranian needs to hide under a rock. And they called him an Osama. Now, when that's being alleged against a person, they're not doing that out of any purposeful means to avoid the race characterization. It's just that these are dirty words in these affidavits. Counsel, your argument would have more strength if you had sued under Title VII, because all of that would be encompassed under Title VII. The difficulty is you sued under a statute which is specifically linked only to race. And so the allegations had to be geared toward race. And I think they were. And I think if you look at St. Francis College versus Qajari, it's a 1987 case. The door is pretty wide open, Your Honor. This is something similar to Comcast, where we're talking about were folks deprived because of the color of their skin. And that's race. Yeah. But you're asking us to infer from these slurs, which they clearly were, Iranian Muslim, that what they're also talking about is Arab. Yes, an Arab ethnicity with an Iranian origin. Well, but the Iranian is irrelevant. The question is whether or not they're discriminating against him because he's an Arab. Yes. All right. And do they know that he's an Arab? The reason I'm asking it this way is that most Iranians are not Arab. In fact, they're probably so. They're Persians. And they'll tell you the drop of a hat that they're not Arabs. So if somebody's calling somebody an Iranian, it may be that they understand that most Iranians are not Arabs. Well, in this situation, they were very aware that he was not white, and that his race was not white, and that he was a devout member of his community, and he was a devout member of his ethnic group. Or maybe the answer is that not only would Arab be a race, but Persian would be a race also, so it doesn't matter. Yes. And remember, in the complaint, we allege that Sahid, his middle name, is means of an Arab descent, and that's an allegation in the complaint. Right. So I'm not questioning at all whether he's Arab. I'm trying to figure out whether those who acted against him knew he was Arab and acted on that basis. No, I have no question at all about whether he, for purposes of this case, I mean, it's not challenged that what he's Arab. Yes. I did not find anywhere in the record that the district court in any way considered that he wasn't eligible to make the claim under 1981 because race was not asserted in this case, and therefore he wasn't even eligible in the first instance to make the claim, but rather focused on the but-for challenge. And is that correct? Yes, Your Honor. I believe footnote 12 on page 27, the district court consented to the notion that this was properly brought under the title 1981. But we're here on de novo review, so we can look at whatever issues of law there are in the case, of course. Yes, of course. Okay, we've taken you well over time, but we will make sure to give you a chance to respond. Let's hear from the other side, and then we'll give you a chance to reply. I appreciate it. Thank you. I'm not sure which of you is going first, Ms. Hyde or Mr. Sutton. May it please the court, Katherine Hyde representing Banner Health, Dr. O'Connor, Ms. Dinner, Mr. Fine, and Mr. Volk. First of all, I'd like to make a couple comments about some of the questions the judges have asked. The district court did mention the fact that it wasn't clear whether race was the basis for the alleged discrimination in the complaint. And the court said that it was assuming without deciding that Dr. Sharifi was eligible to bring a suit under section 1981. So the court addressed it and assumed without deciding the issue. Well, do you have any reason to contest his opinion? Okay. Do you challenge whether or not that was sufficiently alleged in the complaint? He alleges in the complaint that he is Arab. I don't believe he has alleged factual allegations showing that he was discriminated against based on his Arab ethnicity. There are derogatory comments in the affidavits attached to the complaint referring to religion and national origin. But we did argue that those are not actionable because they do not refer to race. We have also argued that they are not actionable under section 1981 because they're remarks that are not connected to the decision-making process. They were not remarks made by the decision-makers who had authority to terminate Dr. Sharifi's privileges. Those people were the members of the hearing panel, the appellate review committee, and the banner board. They were members of the hearing panel. And you know, assuming again for motion to dismiss, you just said they were members of the hearing panel. The people who have a decision-making authority are the members of the hearing panel, but none of the people who made alleged disparaging remarks were members of that hearing panel. Did they present evidence at the hearing? They testified. I believe Dr. O'Connor and Dr. O'Meara testified at the hearing. So if they participated in the decision and assuming that we have to accept that the facts stated in the complaint are true for purposes of a motion to dismiss, does he not have evidence of animus here that these people proceeded with this hearing against him because they had a motivation that was tinged by racial or ethnic bias? And he has argued disparate treatment that whites who may have acted in the same way are not reported and taken to these hearings and he was being treated differently because of his race. I have two responses to that. First, the allegations of disparate treatment are not sufficient under the Bastida case because to show that a non-Arab physician was similarly situated yet treated differently in peer review, you would have to allege that they engaged in similar conduct. They conducted similar surgical procedures. They unethically altered medical records and engaged in disruptive conduct and there were patient care concerns that were equally serious and yet they were treated differently in peer review and he hasn't made those allegations in the complaint. How much specificity does he have to allege? I mean he alleged that people who had similar, not identical, but similar patient issue conduct were not referred to disciplinary actions much less had their privileges revoked. I think the Bastida case is constructive. That case is on point. It involved a doctor who was challenging the termination of clinical privileges and in that case the court said that they needed to be the same procedures at the same hospital. Many of the comparators that Dr. Sharifi has raised were not even practicing or members at Banner-Baywood Medical Center, which is the facility where Dr. Sharifi's privileges were terminated. It's a different medical staff, different bylaws, it's apples and oranges. Secondly, it's important to consider that there were three factors and three grounds for the termination. He hasn't identified anyone who had serious concerns in all three of the areas where the Superior Court found that the termination was justified under the bylaws and supported by substantial evidence. Do we know anything at this point about the relationship between those people who've made the remarks to which the objection has been made and those who sat on the decision-making panel? Obviously they come from the same community. In fact, the bylaws were changed so that they could come from the same community. Do we know anything about any off-the-record communications among these doctors? There are no allegations of any such communications. And the argument, as you understand it, is entirely based upon a notion that, well, these people who are bringing the charges or trying to get him, they may or may not have prejudiced, but the decision-makers are entirely clean of any taint. That's the argument? That's the argument, Your Honor, yes. And we're supposed to infer or rather fail to make the inference on behalf of the plaintiff here? I don't think it's failing to make the inference on behalf of the plaintiff. I think when you look at the race-neutral motivations alleged in the complaint, professional jealousy, economic competition, retaliation for Dr. Sharifi's testimony against Banner in a malpractice case, the complaint about Dr. O'Connor to the chief clinical officer at Banner, his lawsuit and bar complaint against Ms. Dinner, when you take into consideration those race-neutral motivations alleged in the complaint, along with the fact that he is excluded from relitigating the factual issues already decided against him, what is left is not facially plausible to show but for his error of race, he would not have had his privileges terminated. Okay, and I think I want to just sort of dot this I or cross this T. I gather you're making no claim preclusion argument based upon the second lawsuit that was dismissed by the Arizona trial court? No, and to be clear, we're not making a claim preclusion argument based on the superior court decision in the tradition. Oh, you're making an issue preclusion argument. That's correct. No, no, no, the claim preclusion on the second case might have been, but I gather you're not making it, that the 1981 claim could have been bought in that proceeding, but you're not making that argument? No. Do you think that the district judge may have inappropriately weighed evidence not giving the proper inference to the plaintiff when he wrote that he found that your race-neutral explanations were, quote, so convincing, unquote, as to render the plaintiff's allegations implausible, that at this stage, this isn't a summary judgment, he hasn't heard all the evidence, he's weighing based on the face of the complaint where he's supposed to assume the allegations are true, that your position was so convincing to him that he just disregarded the plaintiff's allegations? Your Honor, I believe that the court did not weigh the evidence impermissibly at this stage of the proceedings. The court was applying the Twombly and Iqbal facially plausible standard, which is appropriate to apply on a Rule 12b6 motion to dismiss, and the case law is clear that if the defendant's explanations are so convincing as to render the 1981 claim implausible, he has failed to properly allege but for causation, supported by a well-plaid factual allegation. So the court properly applied the correct standard at this stage of the case. Okay, any further questions from the bench for Ms. Hyde? No. Well, thank you very much. We've taken you over time, but because we're setting the clock separately, Mr. Sutton, you've got five minutes. May it please the court, Jared Sutton, on behalf of Drs. O'Meara and Dr. Maxfield, thank you for the additional time. I appreciate that. I want to follow up on a point that Judge Benchibango and Judge Fletcher raised with Ms. Hyde related to the decision-making position. At least with Dr. Maxfield, there isn't any allegations in the complaint whatsoever that Dr. Maxfield was involved in the decision-making process, and in fact, the district court dismissed Dr. Maxfield on that basis. Dr. Sharifi, in his opening brief, didn't raise that issue at all. We, in response, raised the issue, and again, in reply, Dr. Sharifi didn't raise the issue at all. So at least with respect to Dr. Maxfield, there seems to be no dispute that he wasn't involved in the decision-making process and there hasn't been a against him, and even if there was a question about that, the issue has now been waived on appeal. Second, with respect to Dr. O'Meara, there are more allegations related to statements that he allegedly made from which the court could infer racial animus. The problem is Dr. O'Meara was not actually involved in the decision-making process, and I want to clarify what that process is a an MEC, the Medical Executive Committee, that recommends initially a revocation or suspension of privileges, and then that goes up to a fair hearing panel, which is three independent parties that hear evidence. That decision is taken up to an appellate review committee, and that decision or recommendation is taken up to the Banner Board of Governors. Dr. O'Meara's only involvement was the MEC process and in presenting evidence at the fair hearing. There is no allegation in the first amended complaint that at the fair hearing, Dr. O'Meara made any statements related to Dr. Sharifi's race in any way, or that the fair hearing panel... Did Dr. O'Meara make any statement at any time that could be construed as having racial animus? Well, as a threshold matter, because the statements attributed to Dr. O'Meara related to Dr. Sharifi's nationality, not his race. Let me clarify my question. For purposes of my question, I will take any statement that is derogatory mentioning religion or Iranian as permitting an inference of racial animus. So that may or may not be appropriate, but for purpose of my question, assume that that's so. So my question again is, did Dr. O'Meara at any time make any statement from which it could be inferred that there's racial animus? Yes, Your Honor. There are allegations that Dr. O'Meara made such statements, but there are a couple of important points there. One, many of them are not temporarily proximate to the fair hearing. Several of them were alleged to have been made in 2015, and others don't have any real date attached to them. But if we're trying to figure out what might have been Dr. O'Meara's motivation as a member of the Medical Executive Committee that initiates the peer review investigation and then says, listen, you need the pre-approval before you can prescribe these I think it's fair game to say, well, he said these things and maybe that had some impact on his behavior. Your Honor, I think you said that wrong. I think you used one key word there that answers the question, which is motivation. Even if we assume that Dr. O'Meara made these statements, if they were a motivating factor, that is not enough under the Comcast decision. The plaintiff has to plead but for causation. And in this circumstance, you have a superior court that upheld three non-discriminatory reasons for the action against Dr. Sharifi, and you have Dr. Sharifi's own non-discriminatory reasons in his complaint that he pled. And there are cases from this court that say when a plaintiff pleads non-discriminatory reasons under a but-for causation standard, the allegations of but-for causation are not plausible. As an abstract matter, that's not necessarily true. You can have several contributing causative factors, each one of which could be a but-for causation factor. That's possibly true, but in this situation, Your Honor, that couldn't have happened because we have a superior court judgment that is entitled to preclusive effect, saying there were three specifically non-discriminatory reasons that can't be challenged at this point. So the allegations... Wait a minute. What the superior court did was to say there's substantial evidence supporting each one of them. It did not say there's no but-for causation with respect to race. That question was not before the superior court, nor indeed was it before the fair hearing panel. Which is why the district court held that there was a very narrow pathway by which Dr. Schrieffe could have pled a but-for claim by alleging sufficient disparate treatment with respect to other doctors, because he would have had to have some alternative explanation that nudged his complaint over the line of possibility into plausibility in light of the superior court's simply weren't specific enough under this court's prior case law to take him over the edge. So it was an issue of plausibility. There was theoretically a way for him to plead but-for causation. He just didn't plead sufficient facts to meet that burden. But counsel, why is he limited by a decision that did not address the issues that he's raising now? That's the difficulty I have with the preclusion argument, is that he never had the opportunity to fully litigate his claims of racial or race-based discrimination. The simple answer, your honor, is that we are not attempting to use the superior court judgment as res judicata. This is an issue preclusion argument, and he did have a full and fair opportunity to litigate the grounds that the MEC put forth at the fair hearing for terminating his privileges, which had absolutely nothing to do with discriminatory reasons. So those issues were fully and fairly litigated. They were legitimate reasons for revoking his with allegations of racism. But doesn't issue preclusion include the opportunity to litigate the issue that's before the court at this point? Yes, your honor. And the issue that he's precluded from relitigating is that there were nondiscriminatory reasons for his firing. He cannot relitigate the fact that he had patient care issues. He cannot relitigate the fact that he falsified medical records. And the reason that's because it weighs on the plausibility of his discriminatory allegations at this stage. In other words, in light of those nondiscriminatory reasons and the other nondiscriminatory reasons he alleged in his complaint, it is not plausible that he would not have been terminated but for his race. You know, I would be more inclined to accept that argument if the alleged remarks, and for this point, I take them as having been made, weren't so harsh. I mean, these are not your classic stray remarks. These are pretty nasty remarks. Well, your honor, first of all, we don't believe the remarks were made, but I understand you have to take them as true for the purposes of this proceeding. But secondly, your honor, I don't think the gravity of the remarks really weighs on the analysis here. The question is whether he would have lost his privileges without those remarks, regardless of how strong they were. And in light of the nondiscriminatory reasons for him losing his privileges, and in light of his admitted other motivating factors like greed and business motivations, there just is no plausible statement of but for causation, regardless of how nasty those alleged remarks are. Okay, any further questions from the bench? No. Thank you. Mr. Miller, you sound to reserve some time. We've taken both of the others quite a bit over time. Let's put two minutes on the clock and see what happens. You're muted. Turn your sound on. Hopefully that mistake didn't count against my time. Oh, I did. I'm just kidding. There's a really important point, Judge, that when you asked the question about the law in Arizona, and the preclusive nature of this fair hearing decision, simultaneous with the initiation of this fair hearing procedure, Banner Hospital filed a claim against Dr. Sharifi with the Bureau of Medical Examiners and brought up the same three charges. Now, the Bureau of Medical Examiners is an administrative agency, and it does have real specific scopes and statutes. Same three charges. Bomex found in favor of Sharifi after two hearings and an appeal. So here we've got a Superior Court judge looking at what we're calling a very suspect hearing, and the Superior Court judge saying, yeah, I'm going to agree with what Board Administrative Agency is saying, no. So to that question you had about the preclusive nature of these three charges, our complaint is much more thorough in other allegations they made against Sharifi and other damage they caused him besides those three. They brought him up for sexual harassment charges, which was outrageous because he's a devout man of faith. They brought up for alcohol abuse and a number of other complaints, such as not referring in business and such. So I just wanted to bring that up. I also don't trivialize the language that O'Meara said. He said he was an Iranian who should be hiding under a rock. Osamas have no place at Banner. These are all in affidavits. These aren't only allegations. These are in affidavits. O'Meara was the Chief of Staff and the Chairman of the Medical Committee. In review for me again, the relationship or who employs, first off, the Medical Executive Committee on which Dr. O'Meara served and who's sitting on the Fair Hearing Panel. Who are these people all working for? I'm trying to figure out the commonality. They're all working for the hospital. They're all working for Banner Hospital, with the exception of the reference to Randy, who was brought in to chair one of these panels, we feel, in order to effectuate the intentional discrimination against Dr. Sharifi. But they all work for the hospital. Okay. But thank you very much. I don't have anything else to add. Okay. Thank you very much. Thank all of you, all three of you, for very Banner Health is now submitted. Thank you very much. Thank you. Thank you, Council. We appreciate it.
judges: FLETCHER, RAWLINSON, Bencivengo